# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

DAVID WAWRZYNSKI,

        Plaintiff,           Case no.  10-14550

v.           Hon. Mark A. Goldsmith

H.J. HEINZ COMPANY, L.P., HEINZ GP LLC,
and H.J. HEINZ COMPANY,

        Defendants.
_____/

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

## FIRST AMENDED COMPLAINT WITH JURY DEMAND

Plaintiff David Wawrzynski, through counsel and pursuant to Rule 15(a)(1)(B), states as follows for his Amended Complaint against Defendants H.J. Heinz Company, L.P. ("Heinz LP"), Heinz GP LLC ("Heinz GP") and H.J. Heinz Company ("Heinz") (collectively, Heinz LP, Heinz GP, and Heinz shall be referred to as "Defendants").

    1.    Mr. Wawrzynski is a Michigan resident who lives in Macomb County, Michigan.

    2.    Upon information and belief, Heinz LP is a Delaware limited partnership with its principal place of business located in Pittsburgh, Pennsylvania.

    3.    Upon information and belief, Heinz is a publicly traded Pennsylvania corporation with its principal place of business located in Pittsburgh, Pennsylvania.

    4.    Upon information and belief, Heinz is a limited partner in Heinz LP.

5. Upon information and belief, Heinz GP is a Delaware limited liability company with its principal place of business in Pittsburgh, Pennsylvania.

6. Upon information and belief, Heinz GP is the general partner of Heinz LP.

7. Upon information and belief, the sole member of Heinz GP is Heinz.

8. Upon information and belief, Heinz controls 100% of Heinz GP.

9. Upon information and belief, some or all of the officers and directors of Heinz GP are the officers and directors of Heinz.

10. Upon information and belief, Heinz LP manufactures the Heinz Dip & Squeeze packaging.

11. In fact, despite the fact that Heinz claims that Heinz LP manufactures the Heinz Dip & Squeeze packaging, Heinz claimed in its 2010 annual report that it "sell[s] about 650 million bottles of Heinz Ketchup and 11 billion packets each year across six continents, making our iconic brand The World's Favorite Ketchup." (**Ex. A**.)

12. Heinz prominently celebrated the Dip & Squeeze packaging on the cover of its 2010 annual report. (**Ex. A**.)

13. Moreover, Heinz claims in the annual report that the Dip & Squeeze packaging represents the "[i]nnovation [that] is a Heinz hallmark and a key to unlocking growth in our core brands." (**Ex. A** at 2.)

14. In fact, Heinz, not Heinz LP, claims complete responsibility and ownership for all its innovations, including the Dip & Squeeze packaging, because Heinz only uses the singular possessive when it describes "[t]he *Company's* focus on innovation . . . ." (**Ex. A** at 3.)

15. Heinz's 10-K, attached to its annual report, discloses that Heinz's multi-billion dollar annual sales are impacted by the sale of Heinz ketchup. (**Ex. A** at 18.)

16. As the 10-K notes, volume declines in sales for all Heinz products, not Heinz LP products, are offset by "growth in Heinz ketchup." (**Ex. A** at 18.)

17. Heinz claimed that "[t]he Heinz ketchup improvement was largely due to increased consumption." (**Ex. A** at 21.)

18. As a result, Heinz's gross profit increased $38 million to $1.26 billion in 2009. (**Ex. A** at 21.).

19. Although Heinz has claimed in this lawsuit that it does not do any business in Michigan, Heinz asserts that it had over $10 billion in sales at the end of their fiscal year that ended in April 2010. (**Ex. A** at 40.)

20. Upon information and belief, a portion of the over $10 billion in sales reported in Heinz's annual report were made in Michigan.

21. Upon information and belief, Heinz LP acts only at the direction of Heinz, and Heinz ultimately controls 100% of the decisions of Heinz LP.

22. Upon information and belief, Heinz and Heinz LP have some or all of the same officers and directors.

23. Upon information and belief, Heinz receives Heinz LP's profits.

24. Upon information and belief, the financial statements of Heinz LP and Heinz GP are included in the consolidated financial statements of Heinz because Heinz "maintains a controlling financial interest" in Heinz LP. (**Ex. A** at 46.)

25. Upon information and belief, Heinz files consolidated tax returns on behalf of Heinz LP and Heinz GP.

26. Upon information and belief, Heinz does business in the state of Michigan through Heinz LP and Heinz GP.

27. Upon information and belief, Heinz LP and Heinz GP are the alter egos of Heinz.

28. Mr. Wawrzynski's damages are in excess of $25,000, and venue and jurisdiction are otherwise proper in this Court.

**General Allegations**

29. Mr. Wawrzynski is a local entrepreneur who owns and operates his own food delivery company known as Wok to You.

30. For years, Mr. Wawrzynski has examined and worked with condiment packaging in order to develop a more effective, portable condiment delivery system.

31. On April 29, 1996, Mr. Wawrzynski filed for a patent for Method of food article dipping and wiping in a condiment container.

32. On October 14, 1997, Mr. Wawrzynski was issued a patent for his Method of food article dipping and wiping in a condiment container.

33. Based on his Patent, Mr. Wawrzynski began to market his idea for a new condiment package called the "Little Dipper." In effect, the Little Dipper was a condiment package into which you could dip a food article and the top of the container would wipe off any excess condiment back into the container.

34. On March 13, 2008, Mr. Wawrzynski provided William Johnson, the CEO of Heinz, with a set of his promotional materials for the Little Dipper as well as a letter regarding his product. (**Ex. B**.)

35. Mr. Wawrzynski's Little Dipper and associated promotional materials were developed out of his years of experience in the food delivery industry. Therefore, Mr. Wawrzynski always intended that, if someone used his design and/or his marketing materials that he would be paid for his efforts.

36. Similar letters were sent to Patrick Macedo and Rebecca Serasini at Heinz on March 13, 2008.  (**Ex. C**.)

37. In April of 2008, at Heinz's request, Mr. Wawrzynski met with David Sykes, from Heinz's marketing department, and John Marshall and Bill Racile from Heinz's "Innovation Center."

38. Upon information and belief, Heinz's representatives at this April 2008 meeting understood that if they used Mr. Wawrzynski's ideas for new condiment packaging or for marketing new condiment packaging, Defendants would have to pay Mr. Wawrzynski because they never asked him to sign any agreements to the contrary.  In fact, this was Mr. Wawrzynski's purpose for traveling to Heinz for the meeting.

39. With the understanding that Mr. Wawrzynski was meeting with Heinz's representatives in pursuit of profit and economic benefit, Mr. Wawrzynski was asked by Heinz to develop 100 samples for his Little Dippers for Heinz's "upcoming focus groups."  (**Ex. D**.)

40. Although Mr. Wawrzynski was in the process of developing the products at Heinz's request, Heinz mysteriously and abruptly stopped communicating with Mr. Wawrzynski regarding his product.

41. In fact, in a subsequent phone conversation, and despite the fact that it was never mentioned before in their previous meetings and conversations, Mr. Racile for the first time claimed that Heinz had already independently developed the packaging just before all communications were terminated with Mr. Wawrzynski.

42. When Mr. Wawrzynski did not hear back from Heinz, he decided to send another letter to Mr. Johnson on October 28, 2009.  (**Ex. E**.)  The October 28, 2009 letter once again provided Heinz with marketing materials and diagrams for the Little Dipper.

43. On December 4, 2009, however, Mr. Wawrzynski received a letter from an in-house lawyer from Heinz returning his marketing materials and claiming that they were not interested in his product idea. (**Ex. F**.) This self-serving letter inaccurately identified Mr. Wawrzynski's meeting with Heinz's marketing and development staff, and did not discuss any matters that were discussed at Mr. Wawrzynski's April 2008 meeting with Heinz or the request for samples.

44. Shortly thereafter, in February 2010, Defendants unveiled their own re-design for condiment packaging – the "Dip & Squeeze" condiment package. Defendants claimed that the old condiment packaging was created in 1968, and had not been re-designed since that time. Defendants asserted that its redesign was in response to people's "biggest complaint" that "there is no way to dip and eat on-the-go." (**Ex. G**.)

45. Upon information and belief, and according to public news reports, Defendants had "struggled for years to develop a container that lets diners dip or squeeze, and to produce it at a cost acceptable to its restaurant customers." (**Ex. H**.) Then, just after the time that Mr. Wawrzynski was meeting with Defendants, Defendants claim to have begun working on a product that would allow people to dip their food item into the condiment package, while still ensuring that the packet would not allow for spillage or drips.

46. Defendants began marking the Dip & Squeeze packaging extensively – covered on national news shows and in mainstream media.

47. Upon information and belief, Defendants promoted the Dip & Squeeze packaging relying on ideas and marketing strategies provided by Mr. Wawrzynski to Heinz.

48. Defendants had understood that if it used Mr. Wawrzynski's ideas and marketing strategies, Defendants would have to compensate Mr. Wawrzynski.

49. Defendants have failed to recognize or compensate Mr. Wawrzynski for his ideas and marketing strategies for developing and promoting the Dip & Squeeze packaging.

50. Mr. Wawrzynski has been damaged due to Defendants' conduct.

## Count I – Breach of Implied Contract

51. Mr. Wawrzynski incorporates the allegations in the preceding paragraphs as though fully set forth here.

52. When Mr. Wawrzynski met with Defendants' representatives regarding a new concept for a condiment package, the parties understood that if Defendants used his ideas for new condiment packaging or for marketing the new condiment packaging, Defendants would compensate Mr. Wawrzynski for the reasonable value of his ideas and services rendered to Defendants relative to the value received by Defendants.

53. Therefore, Mr. Wawrzynski and Defendants had an enforceable implied contract between them.

54. Defendants breached the implied contract with Mr. Wawrzynski when they used his ideas and did not compensate him.

55. Mr. Wawrzynski has been damaged by Defendants' actions.

56. Mr. Wawrzynski seeks judgment as set forth below.

## Count II – Unjust Enrichment

57. Mr. Wawrzynski incorporates the allegations in the preceding paragraphs as though fully set forth here.

58. This Count is plead in the alternative to the preceding count.

59. Mr. Wawrzynski provided Defendants with the ideas for new condiment packaging and marketing the new condiment packaging for which he expected to be compensated.

60. Defendants received the benefit of Mr. Wawrzynski's hard work regarding and ideas for new condiment packaging and marketing without providing any value in return to Wawrzynski for his services.

61. Defendants have not paid Mr. Wawrzynski what is owed to him for the value of the services he rendered.

62. It would be inequitable if Defendans were allowed to retain the benefit of Mr. Wawrzynski's hard work without having compensated Mr. Wawrzynski.

63. As a direct and proximate result of Defendants' failure to compensate Mr. Wawrzynski for his ideas regarding new condiment packaging and marketing for new condiment packaging, Mr. Wawrzynski has suffered damages.

64. In order to avoid injustice, Mr. Wawrzynski seeks judgment as set forth below.

## **Relief Requested**

WHEREFORE, Mr. Wawrzynski respectfully requests that this Court order the following relief:

A. Damages in an amount to be determined, plus interest, costs and fees arising from Defendants' failure to pay Mr. Wawrzynski for his concepts and ideas regarding new condiment packaging and marketing for new condiment packaging;

B. In addition or in the alternative to, an award of money damages in favor of Mr. Wawrzynski sufficient to compensate him for all forms of economic loss including, without limitation, incidental damages, consequential damages, lost profits and exemplary damages;

C. Defendants be held jointly and severally liable;

D. All such other relief as the Court may deem just, equitable or appropriate under the circumstances.

**<u>Jury Demand</u>**

Mr. Wawrzynski demands a jury for all issues so triable.

                                        Respectfully submitted,

                                        B<small>OYLE</small> B<small>URDETT</small>

                                        By:s/H. William Burdett, Jr.
                                            Eugene H. Boyle, Jr. (P42023)
                                            H. William Burdett, Jr. (P63185)
                                        14950 East Jefferson, Suite 200
                                        Grosse Pointe Park, Michigan 48230
                                        (313) 344-4000
                                        (313) 344-4001 (facsimile)
                                        burdett@boyleburdett.com
Dated: December 16, 2010              *Attorneys for David Wawrzynski*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

DAVID WAWRZYNSKI,

        Plaintiff,                      Case no.  10-14550

v.                                                   Hon. Mark A. Goldsmith

H.J. HEINZ COMPANY, L.P., and
H.J. HEINZ COMPANY,

        Defendants.
_____/

**Proof of Service**

    I hereby certify that on December 16, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record for all Defendants.

                                                s/H. William Burdett, Jr.
                                                H. William Burdett, Jr.
                                                BOYLE BURDETT
                                                14950 East Jefferson, Suite 200
                                                Grosse Pointe Park, Michigan 48230
                                                (313) 344-4000
                                                (313) 344-4001 (facsimile)
                                                burdett@boyleburdett.com