IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID WAWRZYNSKI,

    Plaintiff,

    v.

H. J. HEINZ COMPANY, ET AL,

    Defendants.

11cv1098
ELECTRONICALLY
FILED

**MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 81) BECAUSE PLAINTIFF'S COMMON LAW CLAIMS ARE PREEMPTED BY FEDERAL PATENT LAW**

Plaintiff sued Defendants for breach of implied contract and unjust enrichment pertaining to a device used to dispense ketchup. Doc. No. 4. In response to Plaintiff's Amended Complaint, Defendants counterclaimed seeking a declaration that they did not infringe Plaintiff's patent and/or that the Plaintiff's patent is invalid. Doc. No. 26.

Currently before the Court is Defendants' Motion for Summary Judgment contending that Plaintiff's claims for breach of implied contract and unjust enrichment are preempted by federal patent law. Doc. Nos. 67 and 68. Defendants' Motion argues that (1) Plaintiff's two common law claims are preempted by federal patent law, and (2) based on the evidence of record cannot prevail on either common law claim. Id.

Plaintiff timely filed his Brief in Opposition to the Motion for Summary Judgment. Doc. No. 80. Plaintiff counters Defendants' preemption argument by contending that he sued Defendants for using his ideas which he presented to Defendants and claims that these presented ideas were not the subject of his patent. Id.

In their Reply Brief, Defendants suggested that the case law upon which Plaintiff relies to support his legal position is distinguishable from the facts herein. Doc. no. 83.

With briefing concluded, this matter is ripe for adjudication.

**I. Factual and Procedural Background**

The following facts are material and uncontested unless otherwise indicated.

Plaintiff is the owner of a method patent which patented his idea for dipping French fries (and/or other food items) into a ketchup or other condiment container (hereinafter the '990 patent). Doc. No. 34-1. The "method" that Plaintiff patented in the '990 patent was a "method" that would allow a diner to dip a French fry (or other item) into a condiment container, obtain some condiment on the item, and then "wipe" any excess condiment from the item upon its removal from the container. Id.

Plaintiff and Defendants agree that Plaintiff met with various representatives of Defendants and corresponded with representatives of Defendants with respect to the development of a ketchup container. Doc. Nos. 4-2 to 4-7. Subsequent to meeting and corresponding with one another, Defendants manufactured and marketed the "Dip and Squeeze" container for ketchup.

Plaintiff filed a lawsuit against Defendants claiming Defendants breached an implied contract with him and were unjustly enriched by their marketing of the "Dip and Squeeze," which was predicated (per Plaintiff) on his ideas and patent. Doc. No. 4.

In his Amended Complaint, Plaintiff stated:

30. For years, Mr. Wawrzynski has examined and worked with condiment packaging in order to develop a more effective, portable condiment delivery system.

2

> 31. On April 29, 1996, Mr. Wawrzynski filed for a patent for Method of food article and wiping in a condiment container.
>
> 32. On October 14, 1997, Mr. Wawrzynski was issued a patent for his Method of food article dipping and wiping in a condiment container.
>
> 33. Based on his ['990] Patent, Mr. Wawrzynski began to market his idea for a new condiment package called the "Little Dipper." In effect, the Little Dipper was a condiment package into which you could dip a food article and the top of the container would wipe off any excess condiment back into the container.
>
> 34. On March 13, 2008, Mr. Wawrzynski provided William Johnson, the CEO of Heinz, with a set of his promotional materials for the Little Dipper as well as a letter regarding his product.
>
> 35. Mr. Wawrzynski's Little Dipper and associated promotional materials were developed out of his years of experience in the food delivery industry. Therefore, Mr. Wawrzynski always intended that, if someone used his design and/or his marketing materials that he would be paid for his efforts.

See Doc. No. 4.

In addition, under the subheading "Count I - Breach of Implied Contract," Plaintiff's Amended Complaint reads:

> 52. When Mr. Wawrzynski met with Defendants' representatives regarding a new concept for a condiment package, the parties understood that if Defendants used his ideas for new condiment packaging or for marketing the new condiment packaging, Defendants would compensate Mr. Wawrzynski for the reasonable value of his ideas and services rendered to Defendants relative to the value received by Defendants.

Id.

However, despite Plaintiff's Amended Complaint allegations which clearly reference his '990 patent, Plaintiff, in his Answer to Defendants' Counterclaims, states that he is not suing Defendants for infringement of his '990 patent. Doc. No. 60, 1. Plaintiff made similar

3

statements in his deposition. Doc. No. 63-2. In addition, Plaintiff executed a covenant not to sue Defendants for any alleged infringement of his '990 patent. Doc. No. 63-3.

**II. Standard of Review**

Summary judgment should be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir.1994). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Penn. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

Once the moving party has properly supported its showing that there is no triable issue of fact and demonstrated an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law. It is on this standard that the court has reviewed each of the Defendant's Motions and their respective Responses.

**III. Discussion**

The issue presented by Defendants to this Court is a purely legal one – whether Plaintiff's common law claims for breach of implied warranty and unjust enrichment are preempted by federal patent law under the facts presented herein. For the reasons that follow, this Court finds that Plaintiff's two claims are preempted. For this reason, the Court will grant Defendants' Motion for Summary Judgment on the issue of preemption, and will not address Defendants' contention that the evidence of record cannot support a viable claim for the common law claims for breach of implied warranty and unjust enrichment. [1]

Under the Supremacy Clause, state law that conflicts with federal law is without effect. U.S. Const. art. VI, cl. 2; s*ee also*, *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) *quoting Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

United States Supreme Court precedent establishes that state law is preempted in any one of three ways, which are explicit, field, and conflict preemption. *Hunter Douglas, Inc. v.*

---

[1] Thus, Plaintiff's Motion to Stay Decision on the Second Ground of Defendant's Motion for Summary Judgment (doc. no. 81) will be denied as moot.

*Harmonic Design, Inc.*, 153 F.3d 1318, 1332 (Fed. Cir. 1998) citing *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990). Federal patent law does not provide explicit preemption of breach of implied contract claims and/or unjust enrichment claims. *See, e.g., Hunter Douglas,* 153 F.3d at 1332; *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005).

Field and conflict preemption rely on an implicit congressional intent to preempt. *Hunter Douglas,* 153 F.3d at 1332; *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470 (Fed. Cir. 1998). Under field preemption, state law is preempted when it regulates conduct in a field that Congress intends the federal government to occupy exclusively. *Id.* Such an intent may be inferred from a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it[.]" *Id.*, citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

The United States Court of Appeals for the Federal Circuit has considered the "general preemptive effect of patent law." *See Dow*, 139 F.3d 1470. As the Court of Appeals noted in *Hunter Douglas*, *American Cynamid*, and8 *Ultra Precision*, Congress did not explicitly nor implicitly (through field preemption) intend to preempt the field of unjust enrichment. *See Hunter Douglas*, 153 F.3d at 1332; *University of Colorado Foundation Inc. v. American Cynamid Co.*, 196 F.3d 1366, 1371 (1999); and *Ultra Precision*, 411 F.3d at 1377. Based on the reasoning and analysis employed in those cases, this Court similarly finds that Congress did not explicitly nor implicitly (through field preemption) intend for patent law to preempt the field of breach of implied contract.

Conflict preemption occurs when a state law is preempted only to the extent that it conflicts with federal law such as when it is impossible for a private party to comply with both

6

state and federal requirements. *Id.* In *Hunter Douglas*, the United States Court of Appeals for the Federal Circuit determined that in order evaluate whether a state claim could be preempted by federal patent law under a conflict preemption theory, Defendants' allegedly tortious conduct must be assessed. 153 F.3d at 1335.

Here, the parties do not dispute that Defendants' representatives and Plaintiff met to discuss a container for Heinz condiments. Doc. Nos. 4-2 to 4-7. The parties also do not dispute that Plaintiff was the owner of the '990 patent. Doc. No. 34-1. In addition, the parties agree that at a minimum, Plaintiff's ideas for Heinz's container "evolved" from his '990 patent. Doc. No. 68, 2.

Plaintiff has produced evidence (in the form of his own deposition testimony, his written admissions in his Answer to Defendants' Counterclaims, and through a "Covenant Not to Sue" Heinz for patent infringement) in support of his legal conclusion that his claims may not be preempted and thus, summary judgment may not be entered in Defendants' favor. Doc. Nos. 60; 63-2; 63-3.

However, this evidence amounts to Plaintiff's own opinion as to whether his common law claims may or may not be preempted by federal patent law. As noted above, whether his claims are, in fact, preempted by federal patent law is a legal question which this Court has the authority to determine based on all the evidence presented.

The Court finds that the facts of this case are very similar to the facts of *Smith v. Healy*, 744 F.Supp.2d 1112 (D. Ore. 2010). As in this case, the Smiths' claims were premised on an

evolved idea from their patent.[2] *Id.* at 1121. Also as in this case, the Smiths communicated with the defendants, both in writing and in person, to discuss the use of their evolved ideas. The District Court held that the Smiths' claim for, *inter alia*, breach of implied contract, was preempted by federal patent law. *Id.*

In *Smith*, the District Court based its determination primarily upon the fact that the plaintiffs were seeking "patent-like remedies in their state-law claims," and secondarily, because the plaintiffs failed to "identify any incremental benefit they are owed by [d]efendant beyond that potentially encompassed by patent law (*i.e.*, damages for making, using, offering to sell, or selling [p]laintiffs' invention without permission)." *Id.*

Turning to the instant matter, in his Prayer for Relief, Plaintiff asks this Court to award the following:

> A. Damages in an amount to be determined, plus interest, costs and fees arising from Defendants' failure to pay [Plaintiff] for his concepts and ideas regarding new condiment packaging and marketing for new condiment packaging;
>
> B. In addition or in the alternative to, an award of money damages in favor of [Plaintiff] sufficient to compensate him for all forms of economic loss including, without limitation, incidental damages, consequential damages, lost profits and exemplary damages; . . . .

Doc. No. 4 at p. 8. Thus, like the plaintiffs in the *Smith* case, Plaintiff here is seeking patent-like remedies for his state-law claims. Like the *Smith* plaintiffs, Plaintiff in the instant case failed to "identify any incremental benefit" he was owed by Defendant beyond that potentially

---

[2] Although Smith had not yet obtained a patent, he had applied for a patent and the District Court held that, for the purposes of preemption, patent applications should be treated as patents.

encompassed by patent law (*i.e.*, damages for making, using, offering to sell, or selling [p]laintiffs' invention without permission).

Moreover, *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257 (1979) and *American Cyanamid*, *supra,* cited by Plaintiff in opposition to Defendants' Motion for Summary Judgment, are distinguishable from the case at bar.

First, in *Aronson,* the plaintiff sued the defendant, an unsuccessful patent applicant, seeking a declaratory judgment that a royalty agreement, to which the two parties agreed, was unenforceable. The United State Supreme Court held that federal patent law did not preempt state contract law so as to preclude the payment of royalties. *Id*. at 266. In reaching this conclusion, the Supreme Court held the enforcement of the parties' royalty agreement was not inconsistent with any of the aims of federal patent law. *Id*. Specifically the Court held, "[t]he device which is the subject of this contract ceased to have any secrecy as soon as it was first marketed, yet when the contract was negotiated the inventiveness and novelty were sufficiently apparent to induce an experienced novelty manufacturer to agree to pay for the opportunity to be first in the market. Federal patent law is not a barrier to such a contract." *Id*.

Here, there is no written agreement like that in *Aronson*. In addition, Plaintiff does not contend that the inventiveness and novelty of his "evolved idea" rose to the level of a secret so critical such that its inventiveness and novelty were enough to induce an experienced condiment manufacturer to agree to pay for the opportunity <u>to be first in the market</u>. To the contrary, Plaintiff's Amended Complaint implies that he was actively marketing his patented concept to those interested in portable condiment delivery systems and thus, lacks the type of

9

allegations required by *Aronson*. See doc. no. 4, ¶¶ 33 - 35.³  Finally, the idea that Plaintiff is suing for is clearly patentable, given that he received the '990 patent.  Thus, the holding in *Aronson* is not applicable to this case for this reason as well.⁴

Plaintiff also cites *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co., Ltd.*, 600 F.3d 1347 (Fed. Cir. 2010) for the proposition that preemption does not apply where patent law is not essential to causes of action for breach of implied contract or unjust enrichment.  However, the United States Court of Appeals for the Federal Circuit was careful to distinguish *HIF*.  In *HIF*, the Federal Circuit held that the unjust enrichment and breach of implied contract claim were based solely on non-patent facts.  *Id*. at 1357.  In the case at bar, the Plaintiff's own statements, as noted above, make it clear that the claims for unjust enrichment and breach of contract do rely on facts which arise out of his '990 patent.  See doc no. 4, ¶¶ 30-35.

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 559 F.3d 1 (1st Cir. 2009) is also distinguishable.  In that case, defendants claimed preemption under 35 U.S.C. § 262, which deals with joint ownership of patent rights.  412 F.3d 215, 234 (1st Cir. 2005).  Thus, although the quotations used by Plaintiff may seem on their face to be beneficial to his argument, when read in context it is clear that they are inapplicable to the case at bar. Furthermore, as discussed above, Plaintiff's reliance on *MEEI* is based on the assumption that

---

³ "Based on his Patent, [Plaintiff] began to market his idea for a new condiment container called the "Little Dipper. . . . [Plaintiff] provided . . . the CEO of Heinz with a set of his promotional materials for the Little Dipper as well as a letter regarding his product. . . . [Plaintiff] always intended that if someone used his design and/or his marketing materials that he would be paid for his efforts."  Doc. No. 44, ¶ 33 – 35.

⁴ The Court finds that *American Cynamid* is likewise inapplicable because: (1) the idea for which Plaintiff is suing is patentable, and (2) the relief Plaintiff seeks in this case is patent-like in nature.

his claims are not related to his patent. This Court has already found that the claims are related to his patent.

Finally, returning again to *Hunter Douglas*, in order to evaluate whether Plaintiffs' two state-based claims could be preempted by federal patent law under a conflict preemption theory, Defendants' allegedly tortious conduct must be assessed. Here it is undisputed that: (1) Plaintiff had a patented product; (2) the patented product was what Plaintiff initially marketed and provided to Defendants; (3) the parties met once in April of 2008; (4) in December 2009, Plaintiff received a letter from Heinz returning all of his marketing materials; and (5) in February of 2010, Heinz unveiled the "Dip & Squeeze," a condiment container for ketchup. The only evidence of record that the Dip & Squeeze was Plaintiff's "evolved idea" is that he sent Defendants materials concerning the "Little Dipper" – *i.e.,* his '990 patent, he met once with Defendants' representatives, and all the '990 materials he sent to Defendants were returned to him months before Defendants released the product in question. Thus, all of the evidence in this case, when viewed in a light most beneficial to Plaintiff, supports a finding that his state law claims are pre-empted.

## IV. Conclusion

In sum, the Court finds that Plaintiff's common law claims conflict with federal patent law, and thus are preempted. Accordingly, Defendants' Motion for Summary Judgment (Doc. No. 67) will be granted. An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties