# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID WAWRZYNSKI,

    Plaintiff,

v.

H. J. HEINZ COMPANY, et al.,

    Defendants.

11cv1098
ELECTRONICALLY
FILED

## MEMORANDUM OPINION

Plaintiff sued Defendants for breach of implied contract and unjust enrichment pertaining to a condiment package used to dispense ketchup. Second Amended Complaint, doc. no. 107. Presently before the Court is Defendants' Motion for Summary Judgment and Brief in support of same. Doc. no. 114 and 115. Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment. Doc. no. 119. Defendants filed a Reply to the Response in Opposition. Doc. no. 124.

In the interim, this Court granted Plaintiff's request to conduct additional discovery, and then allowed the parties to file Supplemental Briefs related to the evidence adduced through the additional discovery. Plaintiff and Defendants timely filed their Supplemental Briefs (and corresponding exhibits) under seal. See doc nos. 148 and 150. This matter is now ripe for adjudication.

I.  **BACKGROUND**

   A.  **Procedural History**

Plaintiff sued Defendants for breach of implied contract and unjust enrichment pertaining to a container used to dispense ketchup. Doc. no. 1-2. Plaintiff originally filed this lawsuit in the Wayne County Circuit Court for the State of Michigan, but Defendants removed the matter to the United States District Court for the Eastern District of Michigan in November of 2010. See doc. nos. 1, 1-2.

Shortly after removing the case to this Court, Defendants filed a Motion to Dismiss Plaintiff's Complaint (doc. no. 2), and in response, Defendant filed an Amended Complaint which continued to assert causes of action for breach of implied contract and unjust enrichment. Doc. no. 4. In response to Plaintiff's Amended Complaint, Defendants filed a Motion to Dismiss, or, in the Alternative to Transfer Venue. Doc. no. 9. The District Court granted the Alternative Motion to Transfer Venue, and in August of 2011, the case was transferred to the United States District Court for the Western District of Pennsylvania, and was initially assigned to Judge Terrence McVerry. Doc. no. 20.

Once the matter was before Judge McVerry, the Defendants filed an Answer to Plaintiff's Complaint along with a Counterclaim alleging that that they did not infringe Plaintiff's condiment container patent and/or that the Plaintiff's container patent was invalid. Doc. no. 26. Plaintiff filed a Motion to Dismiss Defendants' Counterclaim (doc. no. 33), and after the matter was fully briefed, the Court denied Plaintiff's Motion to Dismiss the Counterclaim. Doc. no. 49.

Upon reaching the decision that Defendants' patent counterclaim could proceed, Judge McVerry recused himself in accordance with the Court's Local Patent Rules and Patent Pilot

Program (Section (a)(1)(c) of Public Law 111-349). Doc. no. 53. The matter was then reassigned to this Court. See text orders dated March 8, 2012 reassigning this matter.

Shortly thereafter, Plaintiff filed an Answer to Defendants' Counterclaim. Doc. no. 60. However, Plaintiff then filed another Motion to Dismiss the Counterclaim. Doc. no. 62.

On April 13, 2012, Defendants filed a Response to Plaintiff's (second) Motion to Dismiss their Counterclaim (doc. no. 69), and simultaneously filed a Motion for Summary Judgment. Doc. no. 67. Defendants' Motion for Summary Judgment (and Brief in Support) argued that: (1) Plaintiff's two common law claims were preempted by federal patent law; and (2) based on the evidence of record, Plaintiff could not prevail on either of his two common law claims, as a matter of law. Doc. nos. 67, 68.

The Court denied Plaintiff's (second) Motion to Dismiss the Counterclaim. Doc. no. 79. Shortly thereafter, Plaintiff filed a Motion to Stay the Court's Decision on the second basis for Defendants' Motion for Summary Judgment. Doc. no. 81.

The Court granted Defendants' Motion for Summary Judgment solely on the first basis for the motion – patent preemption (doc. no. 84) – and thus, denied Plaintiff's Motion to Stay the Court's Decision on the second basis as moot. Doc. no. 85. Once the Court determined that the patent counterclaim preempted Plaintiff's common law claims, the only remaining claims in this case were Defendants' counterclaims for non-infringement of patent (Count I) and invalidity of patent (Count II).

Defendants filed a Motion for Summary Judgment on the Counterclaims. Doc. no. 86. In response, Plaintiff filed a Response in Opposition to the Motion for Summary Judgment on the Counterclaim for non-infringement (Count I) and Defendants agreed to withdraw the Counterclaim for invalidity of patent (count II). Doc. no. 89.

3

On June 12, 2012, this Court granted Defendants' Motion for Summary Judgment on the Counterclaim for non-infringement (Count I) for Voluntary Dismissal of the Counterclaim for invalidity (Count II). Doc. no. 92. Plaintiff appealed this decision to the United States Court of Appeals for the Federal Circuit, which, in turn, issued an Opinion and Judgment determining that this case was not a patent case, and transferred the matter to the United States Court of Appeals for Third Circuit. Doc. no. 97.

On July 21, 2014, the Court of Appeals for the Third Circuit issued a Judgment reversing, vacating, and remanding the judgment of this Court. Doc. no. 100. After the Mandate was filed on August 12, 2014 (doc. no. 102), this Court ordered Plaintiff to file a Second Amended Complaint based on the rulings from the Courts of Appeals, and scheduled an initial case management conference. See text Order dated August 13, 2014 and doc. no. 103. Plaintiff timely filed his Second Amended Complaint. See doc. no. 107.

Next, Plaintiff filed a Motion to remove this case from the Patent Pilot Program and transfer the matter back to Judge McVerry. Doc. no. 110. The Court granted the portion of Plaintiff's Motion seeking leave to remove the case from the Patent Pilot Program, but denied the portion of the Motion that sought to have the case transferred back to Judge McVerry.[1] Doc. no. 113.

On September 19, 2014, Defendants filed a Motion for Summary Judgment essentially renewing the second basis of their previous motion – specifically, Plaintiff's alleged inability, as

---

[1] In its Opinion denying the portion of Plaintiff's Motion requesting that Judge McVerry be reassigned to this case, this Court noted that from the time when this case was randomly assigned (in accordance with the Local Rules for the Western District of Pennsylvania) to Judge McVerry, Judge McVerry had taken "senior status" which impacted his case load, Chief Judge Gary Lancaster had died, and former Chief Judge Sean McLaughlin had resigned, leaving the United States District Court for the Western District of Pennsylvania short-handed. The Court also noted that due to its familiarity with the issues presented – especially given the lengthy procedural history of this case – it would be able to judiciously and expeditiously bring this case to trial. Doc. no. 113.

a matter of law, to establish claims based upon his common law theories of unjust enrichment and breach of implied contract. Doc. no. 114. Defendants primarily based their Brief in Support of their Motion for Summary Judgment upon Plaintiff's admissions in his deposition testimony and other alleged undisputed facts of record which purportedly demonstrated that Plaintiff did not present any new or novel idea(s) to Defendants. Id.

Plaintiff simultaneously filed: (1) a Response in Opposition to Defendants' Motion for Summary Judgment, and (2) a Motion to Stay Decision on Defendants' Motion for Summary Judgment. See doc. nos. 119 and 118, respectively. The Motion to Stay requested that this Court delay its ruling on the Motion for Summary Judgment until Plaintiff had time to conduct additional discovery. Doc. no. 118.

This Court granted Plaintiff's request to conduct additional, limited discovery and also granted Plaintiff's request to delay its ruling on Defendants' Motion for Summary Judgment. See doc. no. 128. The Court held a case management conference on November 6, 2014, and with the consent of the parties, ordered both parties to file supplemental briefs on December 10, 2014, following the completion of the additional discovery. See text Order of November 6, 2014.

The parties submitted their respective supplemental briefs (and Exhibts to those Supplmental Briefs) on December 10, 2014. See doc. nos. 148 and 150 (both under seal) .

### B. Factual History

The following facts are material and uncontested unless otherwise indicated.

Plaintiff, a Michigan resident, owns and operates a food delivery company. Doc. no. 107, ¶¶ 1, 26. Plaintiff "began to market an idea for a new condiment package called 'The Little

Dipper.'" Id., ¶ 28. In March of 2008, Plaintiff supplied the CEO of Defendants "with a set of his promotional materials for the Little Dipper[.]" Id., ¶ 29.

Plaintiff's Second Amended Complaint alleges that Plaintiff "intended that if someone used his design and/or his marketing materials that he would be paid for his efforts." Id., ¶ 30. In April of 2008, at Defendants' request, Plaintiff "met with David Sykes [marketing department] and John Marshall and Bill Racile from [Defendants'] 'Innovation Center.'" Id., ¶ 32.

Plaintiff has alleged that during the April 28, 2008 meeting, he "provided Defendants with (1) the idea for a single-serving, dual function condiment container; and (2) the promotional campaign, including identifying the new package with a catchy name." Id., ¶ 33.

Plaintiff and Defendants agree that for a period of time, Plaintiff met with various representatives of Defendants and corresponded with representatives of Defendants. Generally speaking, Plaintiff would classify this communication as collegial and collaborative as he and Defendants' representatives worked on a condiment package. Plaintiff also claims that Defendants representatives requested that he develop 100 samples incorporating his design and marketing ideas for "upcoming focus groups." Id., ¶ 40. Plaintiff claims that communication among himself and Defendants' representatives stopped "mysteriously and abruptly" around October of 2009. Id., ¶¶ 41-44. A letter, dated December 4, 2009, was sent by Defendant's attorney indicating that Defendants were not interested in Plaintiff's "product ideas," and enclosed Plaintiff's design and marketing materials that he had previously provided. Id., ¶ 45.

The parties agree that the "Dip & Squeeze" condiment package was marketed by Defendants starting in and around 2010. Plaintiff claims that Defendants: (1) used his ideas for

the new condiment package and/or for marketing the new condiment package; (2) knew that they had to compensate Plaintiff for such use; and (3) failed to do so.

**II. STANDARD OF REVIEW**

Summary judgment should be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir.1994). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Penn. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

Once the moving party has properly supported its showing that there is no triable issue of fact and demonstrated an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law. It is on this standard that the court has reviewed each of the Defendant's Motions and their respective Responses.

### III. DISCUSSION

**A. Breach of Implied Contract**

In *Baer v. Chase* the United States Court of Appeals for the Third Circuit described an implied contract in this fashion:

> The distinction between express and implied contracts rests on alternative methods of contract formation. Contracts are "express" when the parties state their terms and "implied" when the parties do not state their terms. The distinction is based not on the contracts' legal effect but on the way the parties manifest their mutual assent. *In re Penn. Cent. Transp. Co.,* 831 F.2d 1221, 1228 (3d Cir. 1987) ("An implied-in-fact contract, therefore, is a true contract arising from mutual agreement and intent to promise, but in circumstances in which the agreement and promise have not been verbally expressed. The agreement is rather inferred from the conduct of the parties."); see *Baltimore O.R. Co. v. United States*, 261 U.S. 592, 597 (1923). In other words, the terms "express" and "implied" do not denote different kinds of contracts, but rather reference the evidence by which the parties demonstrate their agreement. *See St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am.*, 158 A.2d 825, 828 (N.J. 1960).

*Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004). See also, *Matter of Penn Cent. Transp. Co.,* 831 F.2d 1221, 1228 (3d Cir. 1987) (An implied-in-fact contract is a true contract arising from mutual agreement and intent to promise, but where the agreement and promise have not been

8

verbally expressed. The agreement is inferred from the conduct of the parties. . . . The elements necessary to form an implied-in-fact contract are identical to those required for an express agreement.).

Similarly, United States District Courts in Pennsylvania, applying Pennsylvania substantive law, have described an implied contract in a comparable fashion:

> "A contract implied in fact can be found by looking to the surrounding facts of the parties' dealings. Offer and acceptance need not be identifiable and the moment of formation need not be pinpointed. 'Implied contracts ... arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract.'" *Henderson v. NutriSystem*, 634 F.Supp.2d 521, 535 (E.D.Pa. 2009) (quoting *Ingrassia Const. Co. v. Walsh*, 486 A.2d 478, 483 (Pa.Super.Ct.1984)) (internal citations omitted).

*Ade v. KidsPeace Corp.*, 698 F.Supp.2d 501, 521 (E.D. Pa. 2010).

Under Pennsylvania law, an implied contract can be breached when one party has the property right to a saleable idea and the other party wrongfully appropriates that idea, thereby breaching the implied contract. See *Thomas v. R. J. Reynolds Tobacco Co.*, 38 A.2d 61, 63 (Pa. 1944). In *Thomas,* the plaintiff sued R. J. Reynolds Tobacco Company for breach of an implied contract allegedly resulting from the appropriation of an advertising idea submitted to the defendant by the plaintiff. The trial court entered judgment in favor of the defendant and the plaintiff appealed.

On appeal, the Pennsylvania Supreme Court held that an implied contract would "be presumed or implied whenever necessary to account for a relation found to exist between parties where no contract in fact exists." *Thomas,* 38 A.2d at 63 (citation omitted). The Court continued by noting that an implied relationship between the parties could be inferred if the defendant "has used for its benefit any property of [the plaintiff] in such manner and under such circumstances that the law will impose a duty of compensation therefor." *Id*. Thus, the

9

Pennsylvania Supreme Court held that a relationship between two parties can be inferred when a plaintiff has property rights in an advertising idea which a defendant appropriates.

However, in concluding that a plaintiff could have a property right to an idea, the Court held, "[n]ot only must the idea to be protected be concrete in form but it must be novel and new." *Id*. The Court reasoned that an idea's novelty is what confers a property right upon the creator of that idea. *Id.* In reaching this conclusion, the Court in *Thomas* noted that other courts had concluded in a similar fashion:

> Only where ideas have been reduced to a concrete form have they been protected by the courts. *Stone v. Liggett & Myers Tobacco Co.*, 260 App.Div. 450, 23 N.Y.S.2d 210, 212; *Alberts v. Remington Rand, Inc.*, 175 Misc. 486, 23 N.Y.S.2d 892, 894. Not only must the idea to be protected be concrete in form but it must be novel and new. *Liggett & Myers Tobacco Co., Inc., v. Meyer*, *supra*, 194 N.E. at page 210. Allegations of novelty and concreteness are insufficient if in fact those attributes are absent. *Plus Promotions, Inc., v. RCA Mfg. Co., Inc., D.C.*, 49 F.Supp. 116, 117.

*Id.*

As applied here, at the summary judgment stage of these proceedings, the question is whether there are any material facts in dispute concerning whether Plaintiff provided Defendants with a novel, or original idea(s) which Defendants had not already envisaged.

Here, Plaintiff alleged he began to "market ***an idea***" for a new sort of condiment container. Doc. no. 107, ¶ 28 (emphasis added). It is undisputed that on or about March 13, 2008, Plaintiff provided Defendants with a copy of his ***promotional materials*** for the condiment container and "a letter regarding his [container]." Id., ¶ 29.

Looking at these two paragraphs and having thoroughly reviewed the parties' briefs and supplemental briefs related to this current Motion for Summary judgment, the first question the Court must answer is: What were "the idea(s)" at issue in this case? Then, once the idea(s) are

10

identified, the question becomes: Were they "novel" and "concrete" such that Plaintiff had a property right in those idea(s)? Proving that an idea is novel and concrete is Plaintiff's burden, and will be key to proving that there was adequate consideration for the alleged implied contract.

Although the container is and was a tangible item, Plaintiff's Second Amended Complaint (as well as his briefing) suggest that the concept or idea behind his condiment container – meaning the dual functionality of the container – is one of "the ideas" at issue. In addition, how Defendants could (successfully) market a dual-function condiment container appears to be yet another "idea" at issue in this case.

Thus, per the Plaintiff, this case is essentially about two "ideas:" (1) a condiment container with dual functionality, and (2) how to successfully advertise and/or market a dual-functional container. Although Defendants have presented evidence which suggests that prior to meeting with Plaintiff, they were actively developing and marketing some sort of dual-function container, Plaintiff has adduced evidence that Defendants lacked success in either creating a feasible dual-function container, and/or in marketing such a container. Given the evidence presented by both parties to this lawsuit, whether either or both of Plaintiff's ideas were novel and concrete are questions for the jury. The credibility of the witnesses each side will present in support of its position on these issues will be germane in this regard.

### B. Unjust Enrichment

At least one other District Court in Pennsylvania has predicted that the Pennsylvania Supreme Court will conclude that the novelty of an idea is equally important in a claim for unjust enrichment. See *Blackmon v. Iverson,* 324 F.Supp.2d 602 (E.D. Pa. 2003). In *Blackmon*, former Chief Judge McLaughlin held:

> Although the Pennsylvania Supreme Court has not opined on whether a
> claim of unjust enrichment based on the use of an idea requires novelty, it

> has required novelty in an implied contract case involving the use of an
> idea. *Thomas*, 350 Pa. at 266–67, 38 A.2d 61. The *Thomas* court
> reasoned that novelty was required for the creator to have a property right
> in the idea used by the other party. *Id*. I hold that the Pennsylvania
> Supreme Court would reach the same conclusion in an unjust enrichment
> case.

324 F.Supp.2d at 613.

Accordingly, if a jury were to determine that Plaintiff's idea(s) were novel and concrete, Plaintiff would be permitted to pursue both his breach of implied contract claim as well as his unjust enrichment claim.

**IV. CONCLUSION**

Given that the parties have presented competing evidence on the issue of novelty, which evidence is material to proving each of the two claims (breach of implied contract and unjust enrichment), the Defendants' Motion for Summary Judgment shall be denied. An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties